SEARCHLIGHT GAS CO. v. PREST–O–LITE CO.

(Circuit Court of Appeals, Seventh Circuit, April 14, 1914. Rehearing Denied July 15, 1914.)

No. 2030.

1. TRADE-MARKS AND TRADE-NAMES (§ 24*)—RIGHTS PROTECTED—RIGHT OF SERVICE.

While service is not trade in articles of commerce and while trade-marks as such must actually be put on articles of commerce or their containers, a trade-mark may cover, not only the physical article sold, but also the incorporeal right to render further service in connection with it.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 27; Dec. Dig. § 24.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 97*)—INFRINGEMENT—INJUNCTION.

Complainant for years sold steel tanks equipped with regulating valves and containing acetylene gas dissolved in acetone for lighting automobiles. The gas packages were patented, and complainant had a license to make and sell the same for automobile use, while the patentee sold them for other purposes. Complainant for its own product used the word "Prest-O-Lite" as a trade-mark, which was stamped into the metal of its tanks, and continued to use the same after the patent expired. It sold the tanks, charged, for $25 each, and furnished the customer with new charged tanks in exchange for those in which the contents had been exhausted for $2.50 each. Held, that the trade-mark covered and protected, not only the original package, but the right to refill the same, and that a deliberate infringer was properly enjoined from recharging such

---

tanks for users "without completely removing and permanently obliterating from the said tanks the said trade-mark Prest-O-Lite."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 32*)—PATENTED ARTICLES—EFFECT OF EXPIRATION OF PATENT.

A licensee under a patent who has adopted and used a distinctive trademark for the special form of the patented article made and sold by him, different from that used by the patentee upon such articles made for different purposes, does not lose his right to such trade-mark on the expiration of the patent.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 36; Dec. Dig. § 32.*]

4. MONOPOLIES (§ 21*)—VIOLATION OF ANTI-TRUST LAW—DEFENSE TO SUIT FOR INFRINGEMENT OF TRADE-MARK.

That a complainant may conduct its business in a manner in violation of the anti-trust law is no defense to a suit for infringement of a trade-mark.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15; Dec. Dig. § 21.*]

5. JUDGMENT (§ 704*)—BAR BY FORMER ADJUDICATION—IDENTITY OF PARTIES.

The decree, in a former suit by complainant and another against defendant and another for infringement of a patent, *held* not a bar to a suit by complainant alone for infringement of a trade-mark, in which its co-complainant in the former suit had no interest.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1229; Dec. Dig. § 704.*]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Suit in equity by the Prest-O-Lite Company against the Searchlight Gas Company. Decree for complainant, and defendant appeals. Affirmed.

Appellant seeks a reversal or modification of the following decree: "That a writ of injunction be issued herein, pursuant to the prayer of said bill of complaint, against said defendant, perpetually restraining and enjoining it, its officers, agents, servants, attorneys, and employés, and all others acting in aid or assistance of it, or claiming or holding under or through it, from hereafter directly or indirectly filling or refilling, charging or recharging, or procuring any person or persons, other than complainant, the Prest-O-Lite Company, to fill or refill, charge, or recharge, any of the said cylinders bearing the trade-mark Prest-O-Lite thereon, with acetylene gas and acetone, or any mixture whatever, and from purchasing any such tanks or holding possession thereof for sale or exchange to the trade, and from selling, exchanging, or in any way dealing in the said cylinders or gas tanks, when so filled or refilled, charged or recharged by the defendant or persons other than the complainant, the Prest-O-Lite Company, without, in every case, completely removing and permanently obliterating from the said cylinders or tanks the said trade-mark Prest-O-Lite, and from in any way using the word 'Prest-O-Lite' to sell or deal in the said gas packages so prepared by it, and from infringing, or offering to infringe, or inducing others to infringe upon the said trade-mark Prest-O-Lite, or the rights of said complainant in and to the trade-mark Prest-O-Lite for illuminating gas in portable tanks in any way whatever."

Similar suits have been sustained in the Northern District of New York (Prest-O-Lite Co. v. Avery Lighting Co. [C. C.] 161 Fed. 648); in the District of Connecticut (Prest-O-Lite Co. v. Post & Lester Co. [C. C.] 163 Fed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

63); in the Southern District of California (Prest-O-Lite Co. v. Bogen [C. C.] 209 Fed. 915, and Prest-O-Lite Co. v. Searchlight Gas Co. [D. C.] no opinion filed); in the District of South Carolina (Prest-O-Lite Co. v. Jenkins, [D. C.] no opinion filed); in the Eastern District of Pennsylvania (Prest-O-Lite Co. v. Auto Equipment Co. [D. C.] no opinion rendered); and in the Southern District of Ohio (Prest-O-Lite Co. v. Davis [D. C.] 209 Fed. 917).

Robert H. Parkinson, of Chicago, Ill., for appellant.

Keyes Winter, of New York City, for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). A reading of the decree gives a general understanding of the purpose of the suit, but the propriety of the terms of the injunction can best be seen against the background of the record facts respecting the nature of appellee's trade and property rights and the character of appellant's trespasses.

For use on automobiles at night appellee many years ago began to sell steel bottles or tanks, equipped with regulatory outlet valves, and containing acetylene gas dissolved in acetone. Empty bottles were never sold by appellee to be filled and used by purchasers, like thermos bottles or lamps are filled and used. Appellee bought steel bottles from steelmakers, just as manufacturing chemists buy glass bottles from glassmakers; and appellee's knowledge and skill, like the chemists', were employed in preparing and preserving the contents. What was offered to users was a unitary gas package. Upon the package was displayed the trade-mark, Prest-O-Lite. And in accepting packages so marked hundreds of thousands of users came to expect and rely on appellee's skill in furnishing them a certain high quality and a reliable quantity of acetylene gas.

Appellant's acts of gathering up empty bottles so marked, filling them with its own mixture, and palming them off upon unsuspecting automobilists as appellee's genuine gas packages, were the plainest sort of infringement. Evans v. Von Laer (C. C.) 32 Fed. 153; Hostetter v. Becker (C. C.) 73 Fed. 297; Hostetter v. Sommers (C. C.) 84 Fed. 333; Pontefact v. Isenberger (C. C.) 106 Fed. 499; Hostetter v. Martinoni (C. C.) 110 Fed. 524; Van Hoboken v. Mohns (C. C.) 112 Fed. 528; General Electric Co. v. Re-New Lamp Co. (C. C.) 128 Fed. 154; Coca-Cola Co. v. Gay-Ola Co., 200 Fed. 720, 119 C. C. A. 164; Notaseme Hosiery Co. v. Straus, 201 Fed. 99, 119 C. C. A. 134; Prest-O-Lite Co. v. Davis (D. C.) 209 Fed. 917; Eckhart v. Consolidated Milling Co., 72 Ill. App. 70; Barnett v. Leuchars, 13 L. T. (N. S.) 495; Richards v. Williamson, 30 L. T. (N. S.) 746; Rose v. Loftus, 38 L. T. (N. S.) 409; Thwaites v. McEvilly, 1 Irish Rep. (1904) 310; Wood v. Burgess, 24 Q. B. D. 162.

Against the part of the decree that ends such piracy there is virtually no defense beyond certain collateral contentions that will be noticed after the consideration of the real merits of the controversy between these parties has been finished.

But appellee has property rights beyond its strict trade-mark rights. A consumer of ordinary articles of trade goes to his local merchant for a fresh supply, or has it sent to his home. A Chicago automobilist,

starting for seashore or mountains and extending his travel into the night, may exhaust his supply of acetylene gas hundreds of miles from home. With such contingencies in mind appellee established a system of service. By an expenditure of over $1,000,000 appellee enabled more than 600,000 users of Prest-O-Lite to get a new supply in every city and town and nearly in every village in our land. For an original Prest-O-Lite gas package the customer paid $25; for each subsequent package, $2.50 and the surrender of the empty steel bottle. This system might be likened to a nation-wide circulating library, to which a customer paid $1.50 for the first book together with the privilege of exchanging it for a new one for 15 cents at any local agency. In all its advertisements appellee offered this service to its customers; and the record shows that they accepted the offer and expected to and did receive the service as part of what was paid for by the original $25. To serve 600,000 customers it was necessary for appellee to keep 675,000 bottles in circulation, empties coming in and charged ones going out. If an empty was unfit for further service, a new bottle was supplied as part of the upkeep cost of the system. Before an empty was permitted to go out again into the stream of service, valves had to be repaired or replaced, acetone replenished or supplied anew, and fresh acetylene gas put into the solvent.

So it is apparent that something more is involved here than the question of rights flowing from the sale and purchase of original Prest-O-Lite gas packages. That something more is an incorporeal right that may best be called service, the right to serve and be served without interference from outsiders. Such a right, as a species of property, has been recognized and upheld. Board of Trade v. Christie Grain & Stock Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031; National Telegraph & News Co. v. Western U. Tel. Co., 119 Fed. 294, 56 C. C. A. 198, 60 L. R. A. 805; Illinois Commission Co. v. Cleveland Tel. Co., 119 Fed. 301, 56 C. C. A. 205; Board of Trade v. L. A. Kinsey Co., 130 Fed. 507, 64 C. C. A. 669, 69 L. R. A. 59; and the Sperry & Hutchinson trading-stamps cases in 137 Fed. 992, in 128 Fed. 800, 833, and 1016, and in 161 Fed. 219.

[1] While service is not trade in articles of commerce, and while trade-marks, as such, must actually be put upon articles of commerce or their containers, we see no reason why an intending servitor may not offer his service under an arbitrary name or sign as well as under his real name. And the ultimate fact of importance is that in the automobile world Prest-O-Lite came to stand, not only for the physical article, but also for the incorporeal right to serve and be served.

Appellant of course was at liberty to establish and conduct an independent and competitive system of service. If appellant had really desired to enter a race of competition on the merits, it would undoubtedly have refrained from feeding on appellee's service, and would also have adopted, on the trade-mark feature of the case, distinctive gas packages and unambiguous labels. Its fraudulent intent to prey on appellee's system of service is abundantly proven. One item will sufficiently illustrate: In letters to seduce Prest-O-Lite dealers appellant suggested that there is "a great deal more money in it

for a Searchlight dealer than any other, as he has the advantage of having two fields to work in." And acts accorded with intent.

[2] This brings us to the biting part of the decree. Appellant is enjoined from recharging Prest-O-Lite tanks "without completely removing and permanently obliterating from the said tanks the said trade-mark, Prest-O-Lite." Appellee stamps the mark into the metal so that appellant finds great difficulty in obliterating the mark completely and permanently without danger of making the tank unusable. What appellant is principally fighting for is a modification that will permit it to recharge Prest-O-Lite tanks and supply them to automobilists without obliterating appellee's marks, but simply by covering them over with its own labels. Appellant has been pasting on Prest-O-Lite tanks a paper label announcing that: "This refilled tank contains acetylene gas made by the Searchlight Gas Co." This label, the record proves, has not been effective to prevent deception of customers demanding and expecting to receive genuine Prest-O-Lite gas packages. The wording is ambiguous; the paster may come off; and if it does not, inasmuch as exchanges are frequently made at night without the driver's getting out of the car, the deceived is likely to be miles away from the deceiver before noticing the paster. But deception of appellee's customers is not the point on this branch of the case. We assume that appellant might be willing to adopt any wording we might suggest, to emboss it indestructibly upon a metal plate, and to solder or otherwise securely affix the plate to the Prest-O-Lite tank, so that appellee's customers could not be deceived. But so long as appellant, without the deception and even with the connivance of appellee's customers, may, by using labels or plates, put Prest-O-Lite tanks into the Searchlight exchange service and use them there until acetone needs to be replenished, valves to be repaired, and possibly the tanks themselves to be replaced, and then by removing the labels or plates restore the appearance of genuine Prest-O-Lite tanks and thereby deceive appellant into accepting and treating them as legitimate parts of its own exchange service, appellee is rightly given the protection of that part of the decree now under consideration. The limit was reached in permitting appellant under any circumstances to make over Prest-O-Lite tanks into Searchlight tanks, and that permission can stand only on condition that the alteration be complete and permanent. Appellee is entitled to have its lifeblood saved from leeches and its nest from cuckoos.

[3] Singer Co. v. June Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, has no application. Acetylene gas packages were patented, and the patent has expired. Appellee had a license to make gas packages for automobile use, and affixed to its packages the trade-mark, Prest-O-Lite. At the same time the patentee made gas packages for use in lighting buoys and railroad cars, and distinguished its packages by other names or marks. We do not understand the Singer Case to hold that at the expiration of a patent all the marks and names used by licensees become public property as the one generic name of the patented article. In this case, furthermore, Prest-O-Lite meant more than the particular article made for automobile use.

[4] Appellant's contention that appellee's exchange stations are not in the hands of appellee's agents, but belong to dealers with whom appellee has made contracts that are violative of the Sherman law, needs no discussion. Board of Trade v. L. A. Kinsey Co., 130 Fed. 507, 64 C. C. A. 669, 69 L. R. A. 59; Coca-Cola Co. v. Gay-Ola Co., 200 Fed. 720, 119 C. C. A. 164; Prest-O-Lite Co. v. Davis (D. C.) 209 Fed. 917.

[5] In Commercial Acetylene Co. v. Schroeder et al., 203 Fed. 276, 121 C. C. A. 474, the present appellee as holder of a license was a co-complainant with the owner of the gas package patent in a suit for infringement against Schroeder and the present appellant. It is true that appellant's acts in recharging and selling Prest-O-Lite tanks were counted on and proven; but they were relied on by the joint complainants therein as infringements of the patent. Against the patent the defenses of noninfringement and expiration of the patent were made, and these defenses were sustained by this court. To hold and assert the franchise to exclude others does not require the patentee to trade in the patented articles, or in any articles. Not only was no issue presented respecting the trade and property rights of appellee that are relied on herein, but, as the patentee never had any joint interest with appellee in its sales or its system of service, no such issue could properly have been considered. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Walker v. Powers, 104 U. S. 245, 26 L. Ed. 729; Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923.

The decree is affirmed.