## COCA-COLA CO. v. DUBERSTEIN et al.

### (District Court, S. D. Ohio, W. D.   March 19, 1918.)

1. TRADE-MARKS AND TRADE-NAMES ☞59(5), 70(4)—"UNFAIR COMPETITION"—WHAT CONSTITUTES.

   Where complainant had a registered trade-mark in the word "Coca-Cola," and had built up a large trade in that popular soft drink, defendant's sale of a competing soft drink under the name of "Coca and Cola," although his product, unlike that of complainant, contained no trace of the coca shrub or cola nuts, must be deemed "unfair competition," and an infringement of complainant's trade-mark, as defendant imitated the size and shape of the bottles in which complainant sold its product, and the word "and," between the words "Coca" and "Cola," was in such small type that purchasers might well deem they were obtaining complainant's product.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

2. TRADE-MARKS AND TRADE-NAMES ☞97—UNFAIR COMPETITION—INFRINGEMENT OF TRADE-MARK.

   Where, during the pendency of a suit by complainant, which had valid trade-mark in the word "Coca-Cola," and had built up a large business in the sale of that drink, to enjoin defendants from selling an imitative drink under the label "Coca and Cola," defendant's change of the label of his drink to "El-Cola" was a mere evasion, and sale thereunder was an infringement of complainant's trade-mark, which under the circumstances amounted to a contempt of court.

3. TRADE-MARKS AND TRADE-NAMES ☞84 — INFRINGEMENT — LABELS — DEFENSE.

   Where, after complainant sued for infringement of its trade-mark, defendant with a paper label covered the infringing name blown in the bottles in which it sold its soft drink, that fact furnishes no protection, as the paper labels were likely to become detached; the bottles being in contact with ice and water while waiting for use.

In Equity.   Bill by the Coca-Cola Company against Benjamin Duberstein, doing business as the Dayton Mineral Water Company, and others.   Decree for complainant, granting an injunction and an accounting, and defendant Duberstein found guilty of contempt.

Matthews & Matthews, of Dayton, Ohio, Harold Hirsch, of Atlanta, Ga., and Frank F. Reed and Edward S. Rogers, both of Chicago, Ill., for complainant.

Dale & Kusworm, of Dayton, Ohio, for defendant Duberstein.

HOLLISTER, District Judge.   [1]   Beginning in 1886, complainant's predecessors had built up a large business in a syrup in which there was an infusion of an extract of coca shrub and of cola nuts; the latter made after, it is said, the cocaine is extracted from them. The syrup is the basis of a nonintoxicating beverage made by combining it with carbonated water.   Since 1892, the complainant has been the exclusive owner and proprietor of the business.   The product was named "Coca-Cola" at the beginning, and the beverage has been known under that name for more than 30 years.   By the expenditure of millions of dollars in advertising it has become well known throughout

the land. The name means, and is understood by the public to mean, complainant's product. The name was registered in 1893 in the Patent Office, and again in 1895, in pursuance of the act of Congress of that year, was registered. The bottles in which it is sold are of uniform size and appearance, with the name "Coca-Cola" blown in them, and the caps of the bottles bear the trade-mark.

The defendant Duberstein, a bottler of soft drinks at Dayton, Ohio, under the name of Dayton Mineral Water Company, bottles a product purchased by him from one John D. Fletcher, who calls his product "John D. Fletcher's Carbonated Syrup, a genuine Coca and Cola Flavor." He was the president of the Nashville Syrup Company, enjoined from making and selling "Fletcher's Coca-Cola." 215 Fed. 527, 132 C. C. A. 39 (C. C. A. 6). The bottles in which Duberstein sells the product to the other defendants, saloon keepers, etc., at Dayton and vicinity, are approximately of the same size as Coca-Cola bottles, and in them is blown the words "Coca and Cola." The "and" is in small type, and the "Coca" "Cola" in script, imitating the script of the genuine Coca-Cola trade-mark. The defendant Coshocton Glass Company is the maker of bottles for Duberstein.

The validity of complainant's trade-mark as the exclusive property of complainant, has been established in a number of cases elsewhere and in this circuit. Coca-Cola Co. v. Nashville Syrup Co. (D. C.) 200 Fed. 153; 215 Fed. 527, 132 C. C. A. 39 (C. C. A. 6). Defendant's product is colored to an exact imitation of the color of complainant's by the use of caramel, which serves no other purpose. The cap on defendant's bottles contains the name "Coca and Cola" in red, with other descriptions indicating that the contents is a flavor of coca and cola. There is no trace of the coca shrub or cola nuts or coca leaves in it. The testimony shows conclusively that it was intended to deceive the consuming public, and in many proved instances did deceive; but, aside from this, the appearance, coloring, size, caps, the delivery slips, the name "Coca and Cola" blown in the bottle, make the product on its face a fraud on the complainant and on the public. The complainant is entitled to an injunction against all the defendants in accordance with its prayer, and for an accounting.

[2, 3] During the progress of the case, Duberstein sold his product as "El-Cola" in the same bottles in which he had been selling "Coca and Cola," covering the words "Coca and Cola," blown thereon, by a diamond-shaped label pasted thereover, on which was printed, in large type in white on a diamond-shaped black background, "El-Cola." By pasting on the label, Duberstein would change his "Coca and Cola" product to "El-Cola," and thereby escape the condemnation he evidently expected "Coca and Cola" would receive in this case. Thereby he is charged by complainant with contempt of court.

This is illustrative of a strange lack of perception on the part of defendant Duberstein, and by many, as the decisions show, in cases of infringement of trade-mark and unfair competition, that the courts deal with matters of substance rather than of form, and that the odor of fraud is difficult to remove. This case reeks with it. Why does the defendant use the word "Cola" at all? And why color its product

as it does? And why adopt the same size of bottles? The only purpose is to appropriate a part of the value of complainant's trademark and good will.

Pasting the label "El-Cola" affords no protection to defendants' illegal act. These bottles are in contact with ice and water all the time while waiting for use. Aside from the instances proved of the labels having become detached, their liability to become detached is so great as not to afford protection, even if their permanency would be a protection. Prest-O-Lite Co. v. Davis (D. C.) 209 Fed. 917, affirmed 215 Fed. 349, 131 C. C. A. 491 (C. C. A. 6); Prest-O-Lite Co. v. Bogen (D. C.) 209 Fed. 917; Prest-O-Lite Co. v. Avery Lighting Co. (C. C.) 161 Fed. 648; Evans v. Von Laer (C. C.) 32 Fed. 153; Wood v. Burgess (1890) 59 Law Jour. N. S. 11; Thwaites & Co. v. McEvilly, 20 Rep. Pat. Cas. 663, affirmed 21 Rep. Pat. Cas. 397, 401, 402.

It is also proved that defendants' "El-Cola" is palmed off by dealers as "Coca-Cola." But the label, if permanent, affords no protection. "El-Cola" is in itself an infringement of complainant's trade-mark "Coca-Cola." Complainant has cited more than 25 applicable decisions.

In addition to the injunction, plaintiff may take an order finding Duberstein guilty of contempt, the punishment to be determined when the formal order is taken.