## AUTO ACETYLENE LIGHT CO. et al. v. PREST–O–LITE CO., Inc.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1921.)

No. 3546.

**Injunction** ⊂⊃223 (1)—**Against unfair competition held violated.**

An injunction restraining defendant from recharging and re-using acetylene gas tanks filled and sold by complainant without obliterating by plating or enameling the name and all identifying marks of complainant, *held* violated where the characteristic label of complainant, giving directions for use, was not obliterated, and its name was covered with a removable enamel or paint applied with a brush.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Suit in equity by the Prest-O-Lite Company, Inc., against the Auto Acetylene Light Company and others. On appeal by defendants from an order adjudging a contempt. Affirmed.

See, also, 276 Fed. 537.

W. S. Thurstin, Jr., of Toledo, Ohio, for appellants.

Frank S. Lewis, of Toledo, Ohio (Doyle & Lewis, of Toledo, Ohio, and Winter & Winter, of New York City, on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The merits of the controversy, out of which grows the present appeal, were before this court in Auto Light Co. v. Prest-O-Lite Co., 264 Fed. 810. The general situation need not be restated. We reached the conclusion that the acts of the Auto Light Company constituted unfair competition and should be enjoined. The decree of the court below, which was affirmed by this court, forbade the Light Company to refill—

"any cylinder or tank upon which the word Prest-O-Lite, complainant's name, or complainant's label, appears, without replating or enameling the outer surface of such cylinders or tanks, so that the name of the Prest-O-Lite Company and the word Prest-O-Lite and all complainant's labels shall be obliterated, to the complete extent that either plating or enameling can be made so to obliterate, and such obliteration by plating or enameling shall not be dispensed with, no matter how such name and trade-mark and labels appear, whether plated, etched, or otherwise, and, in addition thereto, plating or stamping on the outer surface of the tank in legible and permanent form a notice that such tank has been refilled or recharged by the defendants or their agents."

After the remand, complainant instituted a contempt proceeding, alleging that the forbidden practice was still continued, and this resulted in a finding in complainant's favor. Still later, a second contempt proceeding was instituted, and the master found—and the court confirmed the finding—that the defendant was refilling and putting out Prest-O-Lite tanks without that obliteration which the decree required. The court thereupon ordered payment of an amount estimated to be sufficient to cover complainant's expenses and counsel fees in the contempt matter, and from this order defendant appeals.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It was said in our former opinion that the essence of the wrong complained of consists in the palming off of defendant's acetylene gas for complainant's Prest-O-Lite gas. This was a comprehensive statement of the essential wrong as charged in that case, but the present record indicates that the statement may be somewhat broadened. It is the container which, by its inscription, labels, and appearance, accomplishes the deception as to its contents. The evil does not necessarily cease with the mere delivery of the tank to the user. Unless he is explicitly informed, he not only thinks he is getting Prest-O-Lite gas in his tank, but he thinks it is a Prest-O-Lite tank, which will entitle him to the benefit of the Prest-O-Lite service system, and give him the right to exchange this tank, when exhausted, for a full one at any Prest-O-Lite station. See Prest-O-Lite Co. v. Davis (C. C. A. 6) 215 Fed. 349, 350, 131 C. C. A. 491. If the immediate user is fully informed as to the character of the tank's contents, nevertheless a tank of deceptive appearance puts it in his power to deceive a purchaser from him, or even an inattentive Prest-O-Lite agent, to whom he may present the tank for exchange. The obliteration of markings, called for by the decree in this case and by the decrees of other courts, the form of which we followed, was required in order that the chances of deception, both as to the gas contained in the tanks and as to the capacity of the tank for continued use under complainant's service system, should be minimized.

With this in mind, we come to examine what defendant did and failed to do in the way of obliteration. Complainant's label consisted of its name in large type, followed by several lines, in smaller type, of description of the contents of the tank and its manner of use, the whole inclosed by a border and all etched into the metal. See 264 Fed., supra, at page 812. Complainant's name was also etched in smaller type upon the gauge at one end of the tank. Defendant's practice was not uniform, and, in some instances, showed an entire failure to attempt some part of the necessary obliteration; but, rejecting these instances as inadvertent, and giving the defendant the benefit of its best efforts, we find that the name of the complainant, in large type at the beginning of the notice, was buffed off, and the same was done in a second and perhaps a third place in the notice, where the name is in smaller type. These buffed erasures were then covered with what is called a white enamel, put on with a brush. Complainant's name upon the gauge was covered with the same material. There was no attempt to cover the remainder of the label, and its characteristic border and arrangement and details of description remained. The stenciled notice of refilling by defendant was not unduly noticeable, but as to that alone there might not be sufficient ground of complaint. The general impression—at least, the hasty impression—produced by a tank thus treated may well be that it is a Prest-O-Lite tank having the Prest-O-Lite label, and that some daubs of white paint have been carelessly spilled upon it.

The evidence shows that this white material was commonly sold in prepared form under the name of "white enamel," and that it is not uncommon to speak of treating surfaces with this material as

enameling, while the enameling, which is intended when the word is more technically used, calls for a process of applying a finish and baking the same under intense heat, whereby the finish becomes reasonably permanent. The paint enamel, put on cold, is not only likely to scale off, but it may be removed by commercial varnish removers. It is, in effect, an opaque varnish.

Full compliance with the decree is not to be tested by any nice definition of enameling, and it is unnecessary to decide whether under some circumstances the paint enamel might satisfy a decree which called for "enameling." In this case obliteration was the essential thing. Plating and enameling were mentioned only because they seemed to provide the best means of obliteration. Neither one was directed; but, if one would obliterate better than the other under particular conditions, that one must be employed. We think it is clear enough that, if the paint enamel made an imperfectly permanent obliteration, the other enamel should be used, or, if the baking process was not feasible with this tank, then plating should be employed. Further, the failure to cover other parts of the characteristic label is a lack of compliance with the decree. This failure is not justified by the fact that the description of the contents is required by the interstate commerce rules, if the tank is to be transported in interstate commerce. If defendant wishes the tanks it puts out to be so transported, it can attach its own qualifying inscription; but it cannot rightly use the necessity for such an inscription as a reason for not removing a substantial part of complainant's label. That the decree does not impose an impossible standard, nor amount to an indirect destruction of defendant's lawful business, is apparent from the conceded fact that it is now renickeling its refilled tanks in a way that seems to be effective and at a cost that is not prohibitory.

The record does not present the question, raised by the defendant in argument, as to the effect of such a stamping or deep cutting by the complainant of its name on its tanks as wholly to prevent the effective obliteration thereof; but, if such a question has a hypothetical bearing on the issue, we may observe that, if it proves to be commercially impracticable for defendant to refill complainant's tanks without leaving them in such condition that they tend to carry deception as to their contents and their status, the alternative is simple and obvious.

The decree is affirmed.