### AUTO ACETYLENE LIGHT CO. et al. v. PREST-O-LITE CO., Inc.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1920.)

No. 3354.

1. **Trade-marks and trade-names ⬤�き72—Essence of unfair competition stated.**

The essence of unfair competition in connection with the refilling and sale of plaintiff's acetylene gas tanks consisted in the palming off of defendant's gas for plaintiff's.

2. **Trade-marks and trade-names ⬤�き72—Refilling and selling complainant's acetylene tanks without notice to purchaser held unfair competition.**

Where defendant's dealers exchanged, for empty acetylene gas tanks put out by complainant, tanks of complainant's manufacture, bearing its trade-mark and label, but refilled by defendant with its gas, without indicating the substitution to the customers, except by a paper label attached to the tank, which many customers did not notice or read, and customers were deceived into thinking they were obtaining plaintiff's gas, and plaintiff was put to additional loss and expense in refilling and repairing the tanks when returned to it, because of the inferiority of defendant's gas, defendant was guilty of unfair competition.

3. **Trade-marks and trade-names ⬤�き89—Party refilling complainant's acetylene tanks not relieved of liability for deception by its dealers.**

Defendant, who refilled with its own gas complainant's empty acetylene gas tanks, without removing complainant's trade-mark or label, or indicating the substitution, except by a printed paper label, was not relieved of liability for the acts of its dealers in palming off the refilled tanks as plaintiff's gas by the rule applicable to one who has not encouraged the fraud of its dealers and has done its full legal duty to prevent deception.

4. **Trade-marks and trade-names ⬤�き70 (1)—Imitation misleading casual buyer is unfair competition.**

To constitute unfair competition, imitation need not be such as to mislead the careful and discriminating purchaser, but is sufficient if it misleads the ordinary and casual buyer.

5. **Trade-marks and trade-names ⬤�き97—Decree restraining refilling of acetylene gas tanks without certain precautions against deception held justified.**

Where defendant was refilling plaintiff's acetylene gas tanks with its own gas, and furnished them to customers with insufficient notice of the substitution, a decree forbidding such refilling without obliterating plaintiff's name, trade-mark, and labels to the complete extent that either plating or enameling would obliterate them, and without plating or stamping thereon a notice that they had been refilled, was warranted.

6. **Judgment ⬤�き585 (5)—Decree dismissing suit for unfair competition held not to bar subsequent suit, where deception was proved.**

A decree dismissing a suit for unfair competition in connection with the refilling of plaintiff's acetylene gas tanks for lack of proof of decep-

---

⬤�き For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion *held* not to bar a subsequent suit relating to materially changed conditions, in which actual deception and injury to complainant was shown, though defendant's label and the manner of its attachment to the tank were the same during both periods.

**7. Judgment ⊂⊃739—Not ordinarily conclusive of rights subsequently accruing.**

Ordinarily a judgment is not conclusive of the rights of the parties which accrued subsequent to its rendition, though upon the same subject-matter.

**8. Judgment ⊂⊃634—Expression of opinion by court not adjudication.**

In a suit to restrain unfair competition in connection with the refilling of complainant's acetylene gas tanks, which was dismissed for lack of proof of deception, the expression by the judge of the view that a paper label pasted by defendant on the tank negatived deception was not an adjudication that such pasted label constituted a sufficient means of preventing fraud and deception.

Appeal from the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Suit by the Prest-O-Lite Company, Incorporated, against the Auto Acetylene Light Company and another. From a decree for plaintiff, defendants appeal. Affirmed.

W. S. Thurstin, Jr., of Toledo, Ohio, for appellants.

Frank S. Lewis, of Toledo, Ohio, and Keyes Winter, of New York City, for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. The Prest-O-Lite Company, Incorporated, a manufacturer and distributor of acetylene gas for lighting automobiles and other vehicles, brought suit to restrain alleged unfair competition and infringement of trade-mark by defendants; the corporate defendant being a rival manufacturer and distributor of acetylene gas doing business at Toledo, Ohio, and the individual defendant being the president and general manager of the corporate defendant. Complainant stores its gas in portable steel cylinders lined with asbestos, which absorbs a quantity of acetone, which in turn is saturated with acetylene gas introduced under pressure; the outflow for consumption being valve-controlled. The entire package so filled by complainant with its gas is sold to the consumer in the first instance. Complainant's trade-mark for its dissolved acetylene contained in these cylinders was registered June 30, 1906. When the gas is consumed, the tank is, under complainant's long-established system, accepted at any one of its numerous agencies or depots throughout the United States in exchange for a package fully charged by complainant, on payment of a small fraction of the original price of the filled package. Complainant's container is copper- or nickel-plated, and bears a distinctive label, in rectangular form, which includes complainant's trade-mark and the notice appearing below (all

plated upon the surface of the container), which we print in the margin.[1]

The gist of the charge against defendants is that they are recharging Prest-O-Lite containers with acetylene gas of defendant's manufacture, and passing the same off as Prest-O-Lite product. The final decree below enjoined defendants from refilling Prest-O-Lite tanks with any material and from dealing in such tanks refilled by others than complainant without in all cases removing or obliterating complainant's trade-mark, and from passing off such refilled tanks as Prest-O-Lite gas tanks, exchanges or refills.

Right to relief has been sustained in several cases brought by the immediate predecessor of the present plaintiff, not only by this court, but in other courts, upon proof of facts such as are charged against these defendants. Prest-O-Lite Co. v. Davis (C. C. A. 6) 215 Fed. 349, 131 C. C. A. 491; Fransioli v. Prest-O-Lite Co. (C. C. A. 6) 234 Fed. 63, 148 C. C. A. 79; Searchlight Co. v. Prest-O-Lite Co. (C. C. A. 7) 215 Fed. 692, 131 C. C. A. 626; Prest-O-Lite Co. v. Heiden (C. C. A. 8) 219 Fed. 845, 135 C. C. A. 515, L. R. A. 1915F, 945. In accordance with these authorities, complainant was entitled to relief here, provided unfair competition is proven, and unless the defense of former adjudication hereafter considered is sustained.

[1-3] The essence of the wrong complained of consists in the palming off of defendants' acetylene gas for complainant's Prest-O-Lite gas. Standard Co. v. Trinidad Co., 220 U. S. 446, 461, 31 Sup. Ct. 456, 55 L. Ed. 536; Samson Works v. Puritan Mills (C. C. A. 6) 211 Fed. 603, 608, 128 C. C. A. 203, L. R. A. 1915F, 1107. There was presented to the District Court abundant testimony supporting this charge. The testimony of numerous witnesses directly tended to establish the existence of a practice among defendant's dealers of exchanging for empty Prest-O-Lite tanks put out by complainant tanks of the latter's manufacture, bearing its trade-mark and label, but refilled with defendant's gas, and without indicating to the customer the fact of the substitution except so far as information thereof might be conveyed by the printed paper label attached to the tank, stating that it was charged with acetylene gas made and compressed by defendant company, and that the gas therein contained was not repre-

---

[1] "PREST–O–LITE.

"No. ....... Style ....... Dissolved acetylene prepared and compressed into porous substance by the Prest-O-Lite Co., Inc., complies with I. C. C. specification No. 8, maximum permitted pressure 250 lbs. at 70 degrees Fahrenheit. Tensile strength of steel 60,000 lbs. This cylinder is exchanged in Prest-O-Lite system only when filled and issued by the Prest-O-Lite Co., Inc. Year of manufacture stamped on head of cylinder. New York Fire Department certificate of approval No. 3."

It appears that an order of the Interstate Commerce Commission prohibited the transportation of explosives, including acetylene gas, in interstate commerce, unless complying with the regulations of the Interstate Commerce Commission as to pressure.

Defendant Young testified that, when defendant shipped in interstate commerce a Prest-O-Lite tank "after it had been empty," there was put on the crate containing it the requirements of the Interstate Commerce Commission.

sented to be the same as that with which the tank was originally filled. Many witnesses, however, testified to accepting defendant's gas refills in the belief that they were filled by the Prest-O-Lite Company; that they would not otherwise have accepted them; that they wanted Prest-O-Lite gas; that they knew nothing of defendant's gas, and did not want it; and that they either did not notice or did not read the label. In fact, defendant Young testified that—

"The only evidence we give the purchaser, and the only evidence, so far as I know, that the purchaser has, that the tank is not filled by the Prest-O-Lite Company, is the label on the tank, this * * * label of ours."

The testimony, considered as a whole, which included the securing of two dealers who had been handling the Prest-O-Lite product, amply establishes the existence of actual and substantial deception of the public; and while defendants would not be liable for the frauds of their dealers, provided the same were not encouraged by defendants, and had the latter done their full legal duty in providing and toward enforcing measures to prevent such deception (Winterton Gum Co. v. Auto-Sales Gum Co. [C. C. A. 6] 211 Fed. 612, 617, 128 C. C. A. 212), the instant case does not fall within that rule.

[4] Defendants' contention that customers need not have been deceived, had they taken note of the differences disclosed to their senses in the appearance between the Prest-O-Lite package filled by complainant and such package filled by defendant, is answered by the truism that the imitation need not be such as to mislead the careful and discriminating purchaser; it is enough that it misleads the ordinary and casual buyer. Coca-Cola Co. v. Gay-Ola Co. (C. C. A. 6) 200 Fed. 720, 723, 119 C. C. A. 164. Indeed, there is abundant proof of actual deception in this regard of customers presumed to have at least, if not more than, average intelligence and alertness. There was also substantial testimony of the inferiority of defendant's gas, causing injury, not only directly to the customer so deceived, but entailing additional loss and expense to complainant in connection with the refilling and repairing of the tanks when returned to it in the regular course of business. That competition of that nature is unfair and is of a quality entitling complainant to relief is clear.

[5] The decree appealed from forbids defendants to refill Prest-O-Lite tanks without replating or enameling the outer surface thereof, "so that the name of the Prest-O-Lite Company and the words 'Prest-O-Lite' and all complainant's labels shall be obliterated to the complete extent that either plating or enameling can be made to so obliterate, and such obliteration by plating or enameling shall not be dispensed with, no matter how such name and trade-mark or labels appear, whether plated, etched, or otherwise, and in addition thereto plating or stamping on the outer surface of the tank in legible and permanent form a notice that such tank has been refilled or recharged by defendants or their agents." These requirements are assailed as exceeding the court's authority and as amounting to legislation.

The propriety of the requirement in question has been carefully considered, not only by this court, but by the Circuit Court of Appeals of the Seventh Circuit, and has been by each of those courts sustained.

The court below, indeed, merely followed the former decisions of this court. See the Fransioli Case, supra; 234 Fed. at page 64, 148 C. C. A. 80, where the final order as made in both that case and the Davis Case is stated. In the Davis Case the "obliteration" had been by a paper label; in the Fransioli Case by painting over the former label. In the Searchlight Case (C. C. A. 7) the so-called "obliteration" condemned by that court was the same as that employed by defendants here, viz. a paper label shellacked. In the instant case there is evidence that a shellacked label came off in the course of washing the car. In the Heiden Case (C. C. A. 8) the decision, so far as it went, is in harmony with the Davis, Fransioli and Searchlight decisions. We see no reason to depart from our former holdings on this question.

[6] The facts respecting the alleged former adjudication are these: In 1909 plaintiff's predecessor brought suit in equity in the Northern district of Ohio, Eastern division, against the corporate defendant herein, to restrain alleged unfair competition through exchanging for empty Prest-O-Lite tanks containers of that kind refilled with Auto Acetylene gas. The testimony was largely addressed to conditions in 1908. At that time Prest-O-Lite tanks bore a label reading: "Prest-O-Lite Gas Tank. Manufactured solely by the Prest-O-Lite Company"—followed by the company's place of business, number of the tank, and reference to the patents under which it is manufactured. The only other label stated that the device was sold and purchased for sale and use only when charged with gas by the Prest-O-Lite Company; that no license was granted either to any one else to recharge the tank or to sell or use it when charged by any one else than the Prest-O-Lite Company; and that any sale or use of it in violation of these conditions and limitations would be considered an infringement of the letters patent under which the tank was made and sold. We print in the margin this last-mentioned label in full.[2] At that time the Prest-O-Lite system of distribution was not so well established

---

[2] "Prest-O-Lite Gas Tank No. ......

"THE PREST-O-LITE COMPANY.

"New York—Boston—Indianapolis—San Francisco—Toronto.

"Patented Dec. 25th, 1900—May 12th, 1903.

"NOTICE—This device is sold and purchased for sale and use only when charged with gas by the undersigned. No license is granted to sell or use this device when charged by any one else and no license is granted to any one else to recharge this device. Any sale or use of this device when sold or used in violation of this condition and limited license will be considered as an infringement of letters patent of the United States under which this device is made and sold and all parties so selling or using this device contrary to the terms of this limited license will be treated as infringers of said letters patent and render themselves liable to suit for injunction and damages without further notice. This license is good so long as this plate remains upon the device. Any erasures or removals of this plate will be considered a violation of the license.

"A purchase is an acceptance of these conditions. Agents and dealers are not authorized to vary this license. The Commercial Acetylene Company. The Prest-O-Lite Company."

as it latterly came to be. The suit was dismissed in the District Court in 1910, lack of proof of deception being the meritorious reason assigned; Judge Taylor stating in his opinion (Prest-O-Lite Co. v. Auto Acetylene Light Co. [C. C.] 191 Fed. 90, 93) that—

"Assuming that the complainant has made the most of its evidence as to deception, it is not only meager, but trivial. Nobody ever seems to have been deceived or hurt by the conduct of the defendant.[3] What the complainant really seeks to do is to establish a monopoly in its gas tanks. * * * There is no legal objection to a monopoly which arises out of a patent, for it is in its very nature a monopoly; but that cannot arise by interfering with the freedom of some individual who owns a tank to go anywhere he pleases and get his tank exchanged for another tank, unless in the operation of the exchange that person is deceived, and through such deception some reflection is cast upon the Prest-O-Lite Company's tank. That is the only way by which the Prest-O-Lite Company can get into this matter."

From this decree of dismissal an appeal was taken to this court, but later dismissed by the Prest-O-Lite Company. The bill in the instant case was filed in 1917, the proof being directed largely to conditions in 1916. Subsequent to Judge Tayler's decision the labels upon complainant's tanks were changed to read as hereinbefore stated in the description of the tanks in use during the period covered by the present litigation.

As already said, there was in the instant case competent and convincing evidence of actual deception of the public as well as direct and substantial injury to the Prest-O-Lite Company by defendant's method of putting out Prest-O-Lite refills.

We think it clear that the dismissal of the Cleveland suit in 1910, under the conditions then existing and for lack of proof of actual deception or injury, is not a bar to the instant suit, instituted seven years later, relating to materially changed conditions, including actual deception of the public and actual injury entailed on complainant as well as upon the public, notwithstanding defendant's printed label and its attachment to the tank were the same during both periods. It does not appear in the present case that during the period covered by the litigation in the Cleveland suit there existed in fact the deception and injury, proof of which was lacking in that case. Conditions not existing during the period covered by the earlier suit were not and could not have been litigated therein. The cause of action in the second suit was, in a proper sense, a new right of action.

[7] Ordinarily a judgment is not conclusive of the rights of the parties which accrue subsequent to the rendition of that judgment, although upon the same subject-matter. 2 Black on Judgments (2d Ed.) §§ 725, 741, 747; McLaughlin v. McGee, 79 Pa. 217; Amrhein v. Dye Works, 192 Pa. at pages 257, 258, 43 Atl. 1008. So where, in a suit for the infringement of a patent the bill is dismissed for failure to show any infringement, this will not estop the plaintiff from suing the same defendant again for a subsequent and different infringement. 2 Black on Judgments, supra, § 728; Steam Gauge, etc., Co. v. Meyrose, 27 Fed. 213 (opinion by Circuit Judge—afterwards Mr.

---

[3] The transcript of the evidence in the District Court in the Cleveland case shows an absence of substantial proof of actual deception.

Justice—Brewer); Robinson v. American Car Co. (C. C. A. 7) 150 Fed. 331, 332, 80 C. C. A. 127. And compare Russell v. Place, 94 U. S. at page 609, 24 L. Ed. 214, and Hubbell v. United States, 171 U. S. at page 209, 18 Sup. Ct. 828, 43 L. Ed. 136. This rule is equally applicable to infringements of trade-marks and unfair competition.

[8] With respect to the specific relief granted below, already referred to, it is true that Judge Tayler expressed the view that the label pasted on the tank negatived the idea that the Prest-O-Lite Company charged it, and therefore that—

"No deception is practiced on any person who does such an unimportant thing to an automobile as to exchange the acetylene tank, if the label is there before his eyes, and if he does not read it he cannot claim that he was deceived."

But this language was merely incidental to the general subject of deception, and neither it nor the statement that the label ought to be detachable (for a new one should be put on whenever the tank is refilled by any one but a Prest-O-Lite concern) can be considered an adjudication that such pasted label would constitute a sufficient means of preventing fraud and deception. That the trial judge recognized that defendant would be liable for actual deception of the public is shown by the statement, among others, that—

"It would probably be an outrage on the rights of the complainant for the defendant on its own motion to take the plate off and pass off on the community as its own the tank of the Prest-O-Lite Company's manufacture. * * *"

The judgment of the District Court should be affirmed. This conclusion makes it unnecessary to consider appellee's motion to dismiss the appeal, which, if granted, would reach the same substantial result.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes